BRIGHT ET AL. *vs.* WHITE.

1. Books offered in evidence as the " printed statute books" of a sister State, must purport " to be printed under the authority of such " state. (See Rev. Stat. 1835, title, " Evidence," sec. 2, p. 250.) Therefore, the book entitled, " The Statute Laws of the State of Tennessee, of a public and general nature, revised and digested by John Haywood and Robert L. Cobbs, by order of the General Assembly," and the book entitled, "A compilation of the statutes of Tennessee of a general and permanent nature, from the commencement of the Government to the present time, with references to Judicial Decisions in notes: to which is appended a new collection of Forms; by K. L. Caruthers and A. O. Nicholson, Nashville, Tennessee," are not admissible in evidence as the " statute books" of the State of Tennessee, neither " purporting to be *printed* under the *authority* " of that State.

*Bright et al.* vs. *White.*

2. The county courts of the State of Tennessee are courts of general jurisdiction, and the record of the probate of a will from such a court is a record and judicial proceeding within the meaning of the constitution of the United States, and the act of Congress of 26th May, 1790, for the authentication of records, &c.

3. The certificate of a clerk of a court of record, that " the foregoing contains a true and perfect copy of the last will and testament of Joseph Dial, deceased, *and the record of probate remains in my office,*" is defective: it should have stated, "*and of the record of probate remaining in my office.*" It being not only necessary to set out a "true and perfect copy" of the will, but of the record of probate also.

APPEAL from Howard Circuit Court.

CLARK, TODD and KIRTLEY, *for Apellants.*

1. The book offered as Hayward & Cobb's Revisal and Digest of the Laws of Tennessee does purport to be printed under the authority of said State, as evidence of its legislative acts.

2. Caruthers and Nicholson's Compilation does purport to the same effect.

3. The judicial records and proceedings of the County Court of Warren county, Tennessee, are admissible as evidence in the courts of this State.

4. The proceedings offered in evidence are duly attested. — 1 Starkie, 196 *et seq.*; 3 Pickering, 293; Rev. Stat. of Mass., chap. 94, sec. 59; 1 Story's Dig., 93; 2 *Ibid.*, 947; 4 Mon., 153; 6 Litt., 388; 7 Mon., 586.

LEONARD, *for Appellee.*

1. Hayward & Cobb's Digest of the State of Tennessee was no evidence of the statute law of that State, and therefore properly rejected when offered for that purpose; Packard *vs.* Hill, 2 Wendell's Rep., 411; Lincoln *vs.* Battelle, 6 Wendell's Rep., 483; Rev. Stat., title "Evidence," sec. 2.

2. Caruthers & Nicholson's Compilation of the Statutes of Tennessee, either by itself, or accompanied by the statute of Tennessee, of 1831, authorizing the purchase and distribution of this compilation among the officers of the State, was no evidence of the statute law of Tennessee; and, therefore, properly rejected when offered for that purpose. — Same authorities cited above.

3. The alleged copy of the will and probate was no evidence of the will, without some proof of the law of Tennessee in relation to the making and custody of wills, and of the jurisdiction of the court over them.

4. Admitting that the books offered were legal evidence of the laws of Tennessee; or, if not, that the record itself was *prima facie* evidence of the jurisdiction of the court, yet the alleged record was properly rejected, because —

1st. It was not properly certified under the laws of the United States, so as to enable it to be read as evidence of a judicial proceeding. — G. & C. Lendenberger *vs.* Rosseau, 2 Const. Rep. South Carolina; 1 Greenleaf's Ev., 550, 551; 3 Hill & Cowen's edit. of Phil. Ev., 1,130, 1,131, and cases there cited.

2d. The clerk's certificate is defective, in not certifying that the alleged probate of the will is a true copy of the record of such probate.

TOMPKINS J., *delivered the opinion of the Court.*

Jacob Bright, and Hannah, his wife; Joseph Stapp, and Esther, his wife; John Stapp, and Nancy, his wife, and Margaret Wilson, sued John R. White in the Circuit Court of Howard county, and judgment being there given against them, they appeal to this court.

The action was brought to recover damages for the conversion of two negroes, slaves for life, charged to have been converted by White to his own use.

The plaintiffs claimed the slaves in controversy as female heirs of their mother, Elizabeth Wilson, who was the daughter of Joseph Dial, lately deceased, in Warren county, State of Tennessee; the said Joseph Dial having, on the 30th of April, 1827, made his last will, with a bequest to his daughter, Elizabeth Wilson, in these words: — " Elizabeth Wilson has received $420 in a negro girl, named Rhody; and it is further my will that the said girl, Rhody, and her increase, be considered the property of the said Elizabeth during her natural life; and none of them to be disposed of by any person, in any way; and at or after her death, the said negro, Rhody, and her increase, to be equally divided among the heirs of the said Elizabeth's body."

Elizabeth Wilson, the mother of the female plaintiffs, died before the commencement of this suit; and the negroes here sued for are the descendants of the said slave, Rhody, mentioned in the will. A copy of this will was offered in evidence, to which the names of three persons are subscribed as witnesses, and these certificates were attached: —

" The execution of the last will and testament of Joseph Dial was this day proved in open court by the oath of John Fletcher, Thomas Stroud and William Ramsay, subscribing witnesses thereto, who made oath that the deceased was of sound mind and disposing memory; whereupon John Dial came into open court, executor of the last will and testament of said Joseph, deceased, who was qualified, and gave bond and security, as the law directs, as executor, as aforesaid; whereupon it was ordered by the court that letters testamentary issue, &c.

" STATE OF TENNESSEE, *Warren county.*

" I, William Armstrong, clerk of the County Court of Warren county, do certify that the foregoing pages contain a true and perfect copy of the last will and testament of Joseph Dial, deceased, and the record of probate remains in my office.

" Witness my hand, and seal of office, this 11th day of June, 1840.

" WILLIAM ARMSTRONG, *Clerk.*
" *By* JAMES ARMSTRONG, *D. C.*"

" STATE OF TENNESSEE, *Warren county.*

" I, Asa Faulkner, Chairman of said County Court, do certify that William Armstrong, whose name is annexed to the above certificate, is, and was at the time of signing the same, the clerk of said court, duly elected and qualified as such, and that his attestation is in due form of law.

" Witness my hand and seal, this 11th day of June, 1840:

" ASA. FAULKNER, *Chairman.*"

"STATE OF TENNESSEE, *Warren county.*

"I, William Armstrong, Clerk of the County Court of Warren county, do certify that Asa Faulkner, whose name appears to the foregoing certificate, is now, and was at the time of making the same, Chairman of the County Court of said county, duly elected, commissioned and qualified; and that due faith and credit is, and ought to be, given to his attestation as such; and that his said certificate is in due form of law.

"Given under my hand, and seal of office, at office, this 11th day of June, 1840.

"WILLIAM ARMSTRONG, *Clerk,*

"By JAMES ARMSTRONG, *D. C.*"

The plaintiffs then offered in evidence a printed book, with this title-page, viz. — "The Statute Laws of the State of Tennessee, of a public and general nature, revised and digested by John Haywood and Robert L. Cobbs, by order of the General Assembly." Vol. 1, Knoxville. T. F. S. Haskill, printer and publisher. 1831.

The court rejected the said copy of the will, attested as aforesaid, and the said law of Tennessee, on the subject of wills, as aforesaid, and would not permit them to be read in evidence : the plaintiffs excepted.

The plaintiffs then offered the same attested copy of the last will, aforesaid, and offered, as evidence of the law of Tennessee on the subject of last wills and testaments, a printed, bound book, with this title-page — "A Compilation of the Statutes of Tennessee, of a general and permanent nature, from the commencement of the government to the present time; with references to judicial decisions, in notes : to which is appended a new collection of forms. By K. L. Caruthers and A. O. Nicholson. Nashville, Tennessee : printed at the steam-press of James Smith : 1836."

And, as a further proof of the competency of the evidence of the said printed book, offered to read out of a printed, bound book, having this title-page : — "Acts passed at the First Session of the twenty-second General Assembly of the State of Tennessee, 1837-8. Published by authority. S. Nye & Co., Printers to the State : 1838."—To this book no objection being made, the plaintiffs read part of " An act to provide for the distribution of the laws of Tennessee; " by which it appears that the Secretary of State was directed to purchase a sufficient number of " Caruthers & Nicholson's Compilation : " one copy of which was given to the people in each district of the State, for their use, inspection and information, and transmitted to each magistrate of the district; and in each copy to be written — " Presented to the people of the district by the State of Tennessee."

The defendant then objected to reading the paper purporting to be the last will, aforesaid, and the probate thereof, and certificates; and to reading the said acts purporting to be the laws of Tennessee, comprised under the head " Wills," in said volume; or " Compilation of Laws," by Caruthers and Nicholson, aforesaid; which objection was sustained by the court, and the plaintiffs excepted.

The plaintiffs then took a non-suit, with leave to move the court to set the same aside; and afterwards, at the same term, moved to set the said non-suit aside, for

this reason, that the court improperly rejected the evidence offered by them on the trial.

The plaintiffs, to reverse the judgment of the Circuit Court, insist —

1. That the book offered as "Haywood and Cobb's Revisal and Digest of the Laws of Tennessee" does purport to be printed under the authority of the State, as evidence of its legislative acts.

2. That "Caruthers & Nicholson's Compilation" does purport to the same effect.

3. That the judicial records and proceedings of the County Court of Warren county, Tennessee, are admissible as evidence in the courts of this State.

4. That the proceedings offered in evidence are duly attested.

The second section of the act concerning evidence (page 250 of the Digest of 1835) provides, that "The printed statute-books of sister States, and the several Territories of the United States, purporting to be printed under the authority of such States or Territories, shall be evidence of the legislative acts of such States or Territories."

It is by the statutes alone that the printed statute-books of sister States are evidence of the legislative acts of such States; and without the aid of this statutory provision, we should be compelled to prove the statute laws of other States by an exemplification, and not by printed books, of such States. A book purchased out of a book-store, purporting to contain the laws of a State, unless published by authority, would not be admitted anywhere as evidence of the written laws of any government.— Packard et al. *vs.* Hill, 2 Wendell, p. 413.

The title of the first printed book offered in evidence to prove the laws of Tennessee, is, as above-mentioned, "The Statute Laws of the State of Tennessee, of a public and general nature, revised and digested by John Haywood and Robert L. Cobbs, by order of the General Assembly. T.F.S.Heiskill, printer and publisher."

To make such books evidence of the legislative acts of the several States, it is essential that they should *purport to be printed under the authority of such State.* When such a book is printed under the authority of a sister State, such State is presumed to cause the printing thereof to be superintended by a competent and trustworthy agent, who will see that the legislative acts are correctly printed. It is true, we are informed by this title-page that these laws of the State of Tennessee were revised and digested by order of the General Assembly, and we may, therefore, admit that they were revised and digested under the authority of the State; but it is evident, however correct the work might have been when it passed out of the hands of the persons who revised and digested it, *by order of the General Assembly,* that it might have been badly and even unfaithfully printed. To provide against the corruption or misrepresentation of the legislative acts of sister States offered in evidence in our courts, the above-recited act of the Digest of 1835 required that they shall purport to be printed under the authority of the State.

It is not pretended that even this book was printed under the authority of the State of Tennessee. It is not, then, such a book as is, under our statute, admitted to be read as evidence of the legislative acts of the State of Tennessee.

The second book offered in evidence by the plaintiffs is, the "Compilation of Caruthers & Nicholson, Nashville, Tennessee: printed at the steam-press of James

Smith." This book does not purport to be either compiled or printed under the authority of the State of Tennessee. Its pretensions, then, are much lower than the Digest of Haywood and Cobbs, that purports to be digested, but not printed, by authority of the State. But it is contended, that the State of Tennessee manifested its confidence in the accuracy of this compilation of Caruthers & Nicholson, by purchasing a number of copies to be distributed throughout the State. Let it be conceded; yet this Compilation is not authenticated as our act requires. It is on the aid of the act of our legislature alone that the plaintiffs rely to have the Tennessee laws read in evidence; and if they do not comply with its requisition, they cannot give the laws of Tennessee in evidence, however accurately they may be printed.

Neither the Digest of Haywood & Cobbs, nor the Compilation of Caruthers & Nicholson, were admissible in evidence to prove the laws of Tennessee.

The third and fourth points made by the plaintiffs may more properly be considered under one head, and their meaning may be expressed in these words — " That the judicial records and proceedings of the County Court of Warren county, in the State of Tennessee, offered in evidence, are properly attested, and are admissible in evidence in the courts of this State."

It is assumed, that the record of the probate of this will is a record and judicial proceeding of a State within the meaning of the act of Congress of 26th of May, 1790; and it is contended, that it is so attested, that, under that act, it ought to have been received in evidence in the Circuit Court. In Robertson *vs.* Barbour (6th Monroe's Ky. Rep.), the record of the probate of a will is considered a judicial proceeding in the sense of the act of Congress of 26th of May, 1790.

In Greenleaf's Evidence, p. 549, it is said, that it is provided in the Constitution of the United States, that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State; and that the Congress may, by general law, prescribe in what manner such acts, records and proceedings may be proved, and the effect thereof. Under this provision it has been enacted, that the records and judicial proceedings of the courts of any State shall be proved or admitted in any other court in the United States, by the attestation of the clerk, and the seal of the court annexed — if there be a seal — together with the certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the attestation is in due form ; and the said records and proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law, or usage, in the courts of the State wherever the records are or shall be taken. — Statutes of the United States, May 26, 1790.

The judicial proceedings referred to in these acts are also generally understood to be the proceedings of courts of general jurisdiction, and not those merely which are of municipal authority; for it is required that the copy of the record shall be certified by the clerk of the court; and there shall, also, be a certificate of the judge, chief justice, or presiding magistrate, that the attestation of the clerk is in due form. This, it is said, is founded on the supposition, that the court whose proceedings are so to be authenticated is so constituted as to admit of such officers.

*Bright et al.* vs. *White.*

The County Court of Warren county appears, from the transcript of its proceedings spread on this record, to have had a clerk and seal, a chairman, or president, (see *Johnson's Dictionary*,) and it was a court of general jurisdiction; for it may reasonably be supposed that each county had its county court and chairman. It certainly would have been better if the chairman of that court could have called himself presiding judge of the county court, as the act of Congress requires; and there seems to be little doubt but he might properly have done it.

This court, then, is a court of record, within the meaning of the act of Congress of 26th of May, 1790.

The clerk has certified that the foregoing pages contain a true and perfect copy of the last will and testament of Joseph Dial, deceased, and the record of probate remains in his office. The attestation is thus : —

" Witness my hand and seal, this 11th day of June, 1840.

" WILLIAM ARMSTRONG, <i>Clerk.</i><br>" <i>By</i> JAMES ARMSTRONG, <i>D. C.</i>"

And Asa Faulkner, the chairman of the County Court, then certifies, in a manner formal enough, that William Armstrong was clerk, &c., but says nothing in his certificate about the deputy clerk.

The court will not, as now advised, say that the judge should have certified that James Armstrong was deputy clerk. No authorities have been furnished on either side. There is a radical defect in the certificate of the clerk, on account of which this judgment must be affirmed; and if the action should be again brought, the plaintiffs can consider whether they can safely trust to such a certificate. The clerk's certificate, that Asa Faulkner was the chairman of the County Court, was altogether superfluous.

The defect in the clerk's certificate, above-mentioned as radical, is this, viz.: The clerk, after stating that " The foregoing paper contains a true and perfect copy of the last will and testament of Joseph Dial, deceased," adds these words: " And the record of probate remains in my office." It was very material that he should certify that the copy of the will was *true* and *perfect*; it was also very necessary that he should have given us a true and perfect copy of the record of probate, and that he should have also certified it to be a true and perfect copy of such record and probate; but instead of doing this, he certifies that the foregoing pages contain a " true and perfect copy of the last will and testament of Joseph Dial, deceased, and [that] the record of probate remains," &c. The counsel for the plaintiffs proposed to cure this blunder by interlining the word *of* betwixt the words " and" and " the record," and by changing the word " remains" into *remaining*. By this mode of interlining words — that is, of adding them and of altering them where the meaning is already clear — any writing may be so changed, as to mean the very opposite of what it did when it came from the hand of the maker. This certificate, then, is radically defective; that, however formal it may otherwise be, this defect cannot be cured.

The Digest, then, of Haywood and Cobbs was properly rejected, when offered in evidence: so was the Compilation of Caruthers and Nicholson. Neither of

these books were, however, if admissible, absolutely necessary, as the record of probate of wills is a judicial proceeding under the act of Congress.

The certificate of the clerk being radically defective, in not stating that the paper contained a true and perfect copy of the last will and testament of Dial, and of the record of probate remaining in his office, the judgment of the Circuit Court must be affirmed.